UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| JONATHAN MCKAY YOUNG, an individual; and CALEB HUDSON YOUNG, an individual,<br><br>Petitioners,<br><br>v.<br><br>PEPE TOOLS, INC., an Oklahoma corporation, d/b/a PEPETOOLS, INC.,<br><br>Respondent. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO QUASH SUBPOENAS**<br>**(DOC. NO. 2)**<br><br>Case No. 2:25-mc-00887<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge Daphne A. Oberg |

This subpoena dispute arises from a lawsuit Pepe Tools, Inc., filed against Sunstone Engineering, LLC, in the United States District Court for the Western District of Oklahoma.[1] Petitioners Jonathan "McKay" Young and Caleb Young, nonparties to that Oklahoma action, move to quash subpoenas by Pepe Tools seeking their depositions.[2] Pepe Tools opposes the motion.[3] Because the subpoenas are proportional to the needs of the case, do not impose an undue burden, and seek

---

[1] *Pepe Tools, Inc., v. Sunstone Eng., LLC*, No. 5:23-cv-907 (Okla. Dkt.) (W.D. Okla. filed Oct. 5, 2023).

[2] (Mot. to Quash Subpoenas (Mot.), Doc. No. 2.) This order refers to Petitioners individually by their first names for clarity, as this dispute relates to their father, Jonathan Young, Sunstone's CEO.

[3] (Opp'n to Mot. (Opp'n), Doc. No. 5.)

information within the scope of permissible discovery, the motion to quash is denied. Pepe Tools must re-serve the subpoenas with the required witness and mileage fees.

## BACKGROUND

In the underlying Oklahoma action, Pepe Tools asserts, among others, claims for breach of contract and violation of Oklahoma's Deceptive Trade Practices Act (DTPA)[4] against Sunstone.[5]  Specifically, Pepe Tools alleges it conducted business with Sunstone for years through "a purchase-order process"—a contractual relationship Sunstone allegedly breached in May 2023 by failing to fulfill purchase orders it had "accepted" and "entered into its system."[6]  In addition, Pepe Tools claims Sunstone violated the DTPA by knowingly disparaging its "goods, services, and businesses." Namely, Pepe Tools alleges Jonathan Young, Sunstone's CEO, made disparaging posts in 2023 in a "Permanent Jewelry Community on Facebook" suggesting Pepe Tools was an unethical business.[7]

---

[4] Okla. Stat. tit. 23, §§ 51, 53.

[5] (Compl. ¶¶ 50–62, Okla. Dkt. No. 1).)  Sunstone brought counterclaims against Pepe Tools for trademark misappropriation, unfair competition, deceptive trade practices, and cybersquatting in this district, *see Sunstone Eng., LLC, v. Pepe Tools, Inc.*, No. 2:24-cv-00334 (D. Utah), but they were transferred to and consolidated with the Oklahoma action in May 2025.  (*See* Counterclaims ¶¶ 88–99, 112–24, 131–36, 145–52, 159–69, Okla. Dkt. No. 24.)

[6] (Compl. ¶¶ 16–18, 50–52, Okla. Dkt. No. 1.)

[7] (*Id.* ¶¶ 32–33, 58.)

McKay and Caleb are Sunstone employees and sons of Jonathan Young, the company's CEO.[8] McKay has worked as an accountant since May 2024, and worked before that as a part-time entry-level bookkeeper since January 2021.[9] He has never held a management or supervisory position or worked as an account manager.[10] And he attests he never interacted with Pepe Tools, except regarding payments on Pepe Tools' account.[11] According to McKay, he has no personal knowledge of events at issue or the course of dealing between Sunstone and Pepe Tools, as they occurred either before he worked there or while he was an entry-level bookkeeper.[12] Emails, however, indicate McKay was involved in the purchase order process between Pepe Tools and Sunstone. He communicated with Pepe Tools directly about purchase orders for a year until late April 2023 and was listed as a point of contact in early May 2023.[13]

Caleb worked for Sunstone as a microwelding consultant (or permanent jewelry specialist) since September 2024, before taking a sales representative position in August 2025.[14] Previously, he was an entry-level production technician beginning in

---

[8] (Ex. 1 to Mot., Decl. of Jonathan McKay Young (McKay Decl.) ¶¶ 2–4, Doc. No. 2-1; Ex. 2 to Mot., Decl. of Caleb Young (Caleb Decl.) ¶¶ 2–4, Doc. No. 2-2.)

[9] (Ex. 1 to Mot., McKay Decl. ¶¶ 2–3, Doc. No. 2-1.)

[10] (*Id.* ¶¶ 6–7.)

[11] (*Id.* ¶¶ 8–9.)

[12] (*Id.* ¶¶ 10–12.)

[13] (Ex. 1 to Opp'n, Doc. No. 5-1 (email correspondence between McKay and Pepe Tools about purchase orders from May 7, 2022 to May 5, 2023).)

[14] (Ex. 2 to Mot., Caleb Decl. ¶ 2, Doc. No. 2-2.)

June 2022.[15]  Like McKay, he has never held a management or supervisory position.[16]  He also has no access to Sunstone's Facebook account and has never interacted with Pepe Tools.[17]  He attests he has no personal knowledge of the relevant events or claims between Pepe Tools and Sunstone, as they occurred before his time or while he was an entry-level employee.[18]

In March 2025, however, Pepe Tools' counsel emailed Sunstone's counsel regarding new comments Mr. Young (Sunstone's CEO) and Caleb made in "Permanent Jewelry Facebook Community."[19]  Counsel explained Mr. Young had made more false and disparaging posts about Pepe Tools in this public thread, and Caleb apparently had as well, although his comment was later deleted.[20]  Counsel asserted these types of statements bear on Pepe Tools' existing deceptive trade practices claim and asked Sunstone to produce Caleb's comment.[21]  Sunstone did not produce the comment.[22]

---

[15] (*Id.* ¶ 3.)

[16] (*Id.* ¶ 5.)

[17] (*Id.* ¶¶ 6–8.)

[18] (*Id.* ¶ 9.)

[19] (Ex. 3 to Mot., Decl. of Rich Willie (Willie Decl.) ¶¶ 5–6, Doc. No. 2-3 (referencing Ex. 2 to Willie Decl., Doc. No. 2-3 at 27–31).)

[20] (Ex. 2 to Willie Decl., Doc. No. 2-3 at 28–30.)

[21] (*Id.* at 30.)

[22] Pepe Tools appears to believe Caleb's comment has been spoliated but has not formally requested its production.  (*Id.* at 29; Ex. 3 to Mot., Willie Decl. ¶ 18, Doc. No. 2-3.)

In September 2025, Pepe Tools' counsel notified Sunstone of its intent to depose McKay and Caleb.[23] Pepe Tools then served McKay and Caleb with deposition subpoenas but did not tender witness or mileage fees.[24] Counsel conferred the next day, and Pepe Tools explained it sought to depose McKay regarding the parties' course of dealing and Caleb regarding the Facebook statement.[25] Sunstone has not yet been deposed in the underlying Oklahoma action.[26] But Pepe Tools issued document requests to Sunstone eight months ago, and Sunstone's purported failure to sufficiently respond to those requests is currently the subject of a motion to compel pending before the Oklahoma district court.[27]

On October 3, 2025, five days before their deposition date, Petitioners filed the present motion to quash under Rule 45(d) and Rule 26(b) of the Federal Rules of Civil Procedure.[28] Petitioners argue the subpoenas are procedurally defective for failure to

---

[23] (Ex. 3 to Mot., Willie Decl. ¶ 14, Doc. No. 2-3.)

[24] (Ex. 2 to Mot., Caleb Decl. ¶¶ 10–11, Doc. No. 2-2 (citing Ex.1 to Caleb Decl. (subpoena for deposition on October 8, 2025, at 9:00 am)); Ex. 1 to Mot., McKay Decl. ¶¶ 13–14, Doc. No. 2-1 (citing Ex. 1 to McKay Decl. (subpoena for deposition on October 8, 2025, at 1:00 pm)).)

[25] (Ex. 3 to Mot., Willie Decl. ¶ 15, Doc. No. 2-3.) Pepe Tools also sought to depose McKay about venue. (*Id.*) But in July 2024, the Oklahoma district court found venue was proper there. (Okla. Dkt. No. 21 at 19.) Pepe Tools' does not explain the need to depose McKay on venue issues in light of this ruling.

[26] (Ex. 3 to Mot., Willie Decl. ¶ 19, Doc. No. 2-3.)

[27] (Exs. 2 & 3 to Opp'n, Doc. Nos. 5-2 & 5-3.)

[28] (Mot. 1, Doc. No. 2.)

tender the required fees and they impose an undue burden.[29] Pepe Tools opposes, arguing the subpoenas seek relevant and necessary information relating to existing claims and the fee issue can be cured immediately.[30]

## LEGAL STANDARDS

Rule 45 of the Federal Rules of Civil Procedure establishes the standards for quashing subpoenas. "A party . . . responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[31] In pertinent part, Rule 45 requires a court to quash or modify a subpoena that "subjects a person to undue burden."[32] Additionally, Rule 26(b) governs the scope of discovery under subpoenas.[33] Under Rule 26(b), discovery must be "relevant to any party's claim or defense and proportional to the needs of the case," considering factors such as "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

---

[29] (*Id.* at 9–12.)

[30] (Opp'n 1–9, Doc. No. 5.)

[31] Fed. R. Civ. P. 45(d)(1).

[32] Fed. R. Civ. P. 45(d)(3)(A)(iv).

[33] *See Consumer Fin. Prot. Bureau v. Integrity Advance, LLC*, No. 21-mc-206, 2022 U.S. Dist. LEXIS 126523, at *18 (D. Kan. July 15, 2022) (unpublished) (explaining "Rule 45 does not include relevance as an enumerated reason for quashing a subpoena" but it is "well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b)").

burden or expense of the proposed discovery outweighs its likely benefit."[34]

"Information within this scope of discovery need not be admissible in evidence to be discoverable."[35]

## ANALYSIS

Petitioners argue the subpoenas should be quashed for two main reasons. First, they argue that where Rule 45 requires fees to be tendered at the time subpoenas are served, Pepe Tools' failure to tender witness and mileage fees means the subpoenas must be quashed.[36] Second, Petitioners argue the subpoenas impose an undue burden because Petitioners have little to no relevant information and Pepe Tools is seeking discovery of unpled claims about events occurring after it filed this lawsuit.[37] Pepe Tools responds to both points, arguing the subpoenas seek relevant and necessary information relating to existing claims and the failure to tender fees is immediately curable.[38] Petitioners' motion to quash is denied. The procedural fee defect is curable, and the subpoenas do not impose an undue burden, where they seek information within the scope of permissible discovery.

---

[34] Fed. R. Civ. P. 26(b)(1).

[35] *Id.*

[36] (Mot. 9, Doc. No. 2.)

[37] (*Id.* at 9–12.)

[38] (Opp'n 1–9, Doc. No. 5.)

First, although Pepe Tools failed to tender the required witness and mileage fees with the subpoenas,[39] this is a technical defect which can be cured by re-serving the subpoenas with the required fees.[40] Where the dispute has been fully briefed, it makes little sense to decide the dispute based on a curable procedural defect in the first instance, rather than addressing the substantive issues. Before deposing McKay and Caleb, Pepe Tools must re-serve the subpoenas with the required fees in accordance with the applicable rules. Should it fail to do so, Petitioners may challenge the subpoenas as procedurally defective.

As for the substantive merits of the dispute, the subpoenas seek relevant information from two current Sunstone employees, they are proportional to the needs of the case, and they do not impose an undue burden. Rule 45 requires quashing or

---

[39] Fed. R. Civ. P. 45(b)(1) ("Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law.").

[40] *See Nelson v. Hardacre*, 312 F.R.D. 609, 614 (D. Kan. 2016) (quashing subpoena on substantive grounds but declining to do so on fee technicality); *see also KOS Bldg. Grp., LLC v. R.S. Granoff Architects, P.C.*, No. 19-cv-2918, 2020 U.S. Dist. LEXIS 73465, at *10 (S.D.N.Y. Apr. 24, 2020) (unpublished) (declining to quash subpoenas on fee technicality because even if the subpoena was invalid, "Defendants could readily correct this defect by promptly re-serving the subpoena along with the witness fee"); *Stiles v. Walmart Inc.*, No. 1:20-mc-002, 2020 U.S. Dist. LEXIS 72475, at *9–10 (S.D. Ohio Apr. 24, 2020) (unpublished) (explaining "there is no merit in quashing a subpoena" on technical grounds because a subsequent subpoena cured the procedural defect "and substantive issues have been fully briefed"); *PHE, Inc. v. Dep't of Just.*, 139 F.R.D. 249, 255 (D.D.C. 1991) (finding, "to the extent that the failure to accompany the Rule 45 subpoena . . . with a check rendered the subpoenas technically defective, the subsequent tender of the check corrected any deficiency"); *cf. Pappas v. Frank Azar & Assocs., P.C.*, No. 06-cv-01024, 2007 U.S. Dist. LEXIS 66368, at *48 (D. Colo. Sept. 7, 2007) (unpublished) (quashing subpoena for failure to tender fees where defect was not cured).

modifying a subpoena that "subjects a person to undue burden."[41] And Rule 26(b), which governs the scope of discovery,[42] provides that discovery must be "relevant to any party's claim or defense and proportional to the needs of the case."[43] As the subpoenas fall within this scope, they do not impose an undue burden.[44]

**Relevance.** First, both subpoenas seek relevant information. McKay's testimony is relevant to Pepe Tools' breach of contract claim. Pepe Tools alleges the parties conducted business for years through "a purchase-order process," a contractual relationship Sunstone breached by failing to fulfill purchase orders in May 2023.[45] And although McKay asserts he has no personal knowledge of the parties' course of dealing, emails indicate he was directly involved in the purchase order process between Pepe

---

[41] Fed. R. Civ. P. 45(d)(3)(A)(iv).

[42] *See Integrity Advance*, 2022 U.S. Dist. LEXIS 126523, at *18.

[43] Fed. R. C. P. 26(b)(1).

[44] *See Thomas v. Ackermann*, No. 1:23-cv-00721, 2024 U.S. Dist. LEXIS 97499, at *13–20 (D. Colo. May 31, 2024) (unpublished) (determining if Rule 45 subpoena for documents creates an undue burden by considering relevance of the information requested and proportionality of the request); *Mun. of Mariana*, 713 F. Supp. 3d 1125, 1132 (D.N.M. 2024) ("According to [Rule 45(d)(3)(A)(iv)], a federal court must modify or quash a subpoena that subjects a person to an undue burden, which depends on factors such as relevance and the burden imposed."); *Wopsock v. Dalton*, No. 2:12-cv-0570, 2018 U.S. Dist. LEXIS 54605, at *12–16 (D. Utah Mar. 29, 2018) (unpublished) (concluding the petitioner failed to show deposition subpoenas imposed an undue burden, where they sought relevant information that was proportional to the needs of the case); *see also Nguyen v. Fraunhofer-Gesellschaft Zur Forderung der Angewandten Forschung E.V.*, No. 21-0014, 2021 U.S. Dist. LEXIS 234195, at *9–11 (D.D.C. Dec. 7, 2021) (unpublished) (concluding that, where petitioner had relevant information, her mere attendance at one-day deposition did not constitute an "undue burden" to quash a Rule 45 deposition subpoena).

[45] (Compl. ¶¶ 16–18, 51–52, Okla. Dkt. No. 1.)

Tools and Sunstone. He communicated with Pepe Tools about purchase orders for a year, until late April 2023, just before Sunstone failed to fulfill the purchase orders—and he was listed as the point of contact.[46] Because McKay was directly involved in the purchase-order communications, he has knowledge relevant to the breach of contract claim.

Caleb's testimony is relevant to Pepe Tools' deceptive trade practices claim. Pepe Tools claims Sunstone violated Oklahoma's DTPA because it "knowingly disparaged the goods, services, and businesses" of Pepe Tools "by false or misleading fact."[47] The complaint alleges Mr. Young, Sunstone's CEO, made disparaging posts in a "Permanent Jewelry Community on Facebook" in 2023, suggesting Pepe Tools was an unethical business.[48] And recently, Pepe Tools discovered Mr. Young made additional, similar disparaging statements about Pepe Tools' business in the same Facebook community in March 2025.[49] Caleb, a current employee, made a comment (which has been deleted) in that same online conversation.[50] Based on the responses to Caleb's comment, Pepe Tools has reason to believe it was similarly disparaging.

Although Mr. Young and Caleb made these comments in 2025, they are relevant to Pepe Tools' existing deceptive trade practices claim. Evidence that Sunstone's CEO

---

[46] (Ex. 1 to Opp'n, Doc. No. 5-1.)

[47] (Compl. ¶ 58, Okla. Dkt. No. 1.)

[48] (*Id.* ¶ 32–33.)

[49] (Ex. 2 to Willie Decl., Doc. No. 2-3 at 28–31.)

[50] (*Id.* at 29–30.)

and a current employee are continuing to disparage Pepe Tools by making false or misleading statements provides additional support for the existing claim that Sunstone violated Oklahoma's DTPA by knowingly disparaging Pepe Tools' goods, services, and businesses by false or misleading fact.[51] No doubt, Caleb has relevant information regarding the comment he made in that Facebook forum. Indeed, because his comment was deleted, he is potentially the only source of this information. And Pepe Tools tried unsuccessfully to obtain a copy of the deleted comment from Sunstone.

Petitioners argue Caleb's statements cannot be attributed to Sunstone, because he used a personal account and was only an entry-level employee.[52] But whether Caleb's comments may be attributed to Sunstone is not an issue before the court on this motion. The issue here is whether his comment falls within the scope of discovery—not whether Sunstone ultimately may be held liable for it. Regardless of whether Caleb was using his personal account, he was an employee who made an allegedly disparaging comment about Pepe Tools in the same thread as comments made by Sunstone's CEO. Pepe Tools is entitled to seek discovery about these

---

[51] For this reason, the cases Petitioners rely on are distinguishable. *See, e.g., Lifeguard Licensing Corp. v. Kozak*, 15 Civ 8459, 2016 U.S. Dist. LEXIS 68724, *6 (S.D.N.Y. May 23, 2016) (unpublished) (denying a motion to compel discovery responses insofar as they sought information about specific defenses, e.g., functional use, that had not been pled); *Travelers Ins. Co. v. Broadway W. St. Assocs.*, 164 F.R.D. 154, 158 (S.D.N.Y. Dec. 5, 1995) (discussing the magistrate judge's discovery decision and explaining the court had refused to allow "unlimited discovery concerning unpled allegations" and had allowed the party to plead the "additional defenses or counterclaims relating to the issues for which discovery was sought," but the party never did).

[52] (Mot. 10–11, Doc. No. 2.)

comments where they are relevant to the existing deceptive trade practices claim. In short, Pepe Tools has shown Caleb has relevant knowledge regarding whether Sunstone, through its employees, is continuing to engage in conduct that violates Oklahoma's deceptive trade practices statute.

**Proportionality.** Second, the subpoenas seek information proportional to the needs of the underlying case. Both McKay and Caleb have information relating to the breach of contract and deceptive trade practices claims. They are current employees of a party to the Oklahoma action, and they have relevant knowledge. Accordingly, deposing them is proportional to the needs of the case.

McKay's testimony is proportional because it goes to the key allegation for Pepe Tools' breach of contract claim: the purchase order process between Pepe Tools and Sunstone. And McKay's knowledge spans an important timeframe—the year leading up to Sunstone's alleged breach of contract. Where emails suggest McKay has at least some knowledge about the course of dealing between Pepe Tools and Sunstone, his argument to the contrary is unpersuasive.[53]

Caleb's testimony is proportional to the needs of the case because it relates to the core of Pepe Tools' deceptive trade practices claim. Caleb is a Sunstone employee, has been since 2022, and was actively participating in and making comments in the

---

[53] *See Nguyen*, 2021 U.S. Dist. LEXIS 234195, at *10–11 (explaining depositions, importantly, allow a party to ask probative follow-up questions about information already received in discovery, and a "professed lack of knowledge" is typically insufficient to warrant quashing a deposition subpoena (quoting *Alexander v. FBI*, 186 F.R.D. 60, 64 (D.D.C. 1998)).

same Facebook forum as Sunstone's CEO.  Likely, Caleb can provide unique context about the conversation in that forum.[54]  This is important where Pepe Tools' deceptive practices claim is based on Mr. Young's earlier comments in exactly the same forum.  Where the subpoenas target relevant and proportional information, they are neither a fishing expedition nor geared toward harassment, as Petitioners suggest.

**Undue burden.**  Finally, the subpoenas do not subject Petitioners to undue burden.  The thrust of Petitioners' argument is that, because they have little to no relevant information, preparing for and attending a deposition imposes an undue burden.[55]  But, as explained, Petitioners have relevant information proportional to the needs of the case.  Merely having to prepare for and attend a deposition that seeks such information is not an undue burden.[56]  And Petitioners provide no other evidence

---

[54] *See, e.g.*, *Wopsock*, 2018 U.S. Dist. LEXIS 54605, at *15–16 (concluding the defendants were "entitled to depose other[] individuals who may have knowledge concerning what [the plaintiff] said about the alleged assault").

[55] (Mot. 9–11, Doc. No. 2.)

[56] *See United States v. Amadea*, No. 23 Civ. 9304, 2024 U.S. Dist. LEXIS 186711, at *7 (S.D.N.Y. 2024) (unpublished) ("When a party moves to quash a subpoena on the basis of undue burden, he must do more than simply allege that compliance will be inconvenient."); *Nguyen*, 2021 U.S. Dist. LEXIS 234195, at *10–11 (rejecting the petitioner's unsupported assertion that she would be unduly burdened from one day Zoom deposition, where she had relevant information); *see also E.E.O.C. v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993) ("A court will not excuse compliance with a subpoena for relevant information simply upon the cry of unduly burdensome.").

of any burden the depositions would impose.[57]  Accordingly, Petitioners fail to show the subpoenas impose an undue burden.[58]

## CONCLUSION

The motion to quash[59] is denied.  The subpoenas do not impose an undue burden.  They seek relevant and proportional information from two current employees of a party to the underlying case.  The subpoenas need not be quashed based on the failure to tender fees, a procedural defect, where the substantive issues have been fully briefed and the defect is curable.  Before Petitioners' depositions, Pepe Tools must re-serve the subpoenas with the required witness and mileage fees and in accordance with the applicable rules.

DATED this 8th day of December, 2025.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[57] Apparently, each deposition will be half a day.  (*See* Ex. 2 to Mot., Caleb Decl. ¶¶ 10–11, Doc. No. 2-2 (citing Ex.1 to Caleb Decl. (subpoena for deposition on October 8, 2025, at 9:00 am)); Ex. 1 to Mot., McKay Decl. ¶¶ 13–14, Doc. No. 2-1 (citing Ex. 1 to McKay Decl. (subpoena for deposition on October 8, 2025, at 1:00 pm)).)

[58] Petitioners' assertion that Pepe Tools has not taken reasonable steps to avoid undue burden is uncompelling.  (Mot. 10, Doc. No. 2.)  Aside from the fact that Petitioners have not shown the subpoenas impose any undue burden, Pepe Tools has pursued discovery directly from Sunstone and has not, as Petitioners claim, sought discovery only from nonparties.  Moreover, Pepe Tools informally sought production of Caleb's deleted Facebook comment from Sunstone before seeking to depose him.  (Ex. 2 to Willie Decl., Doc. No. 2-3 at 29–30.)

[59] (Doc. No. 2.)